IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CRG PARTNERS, LLC, et al.        §
                                 §
VS.                              §   CIVIL ACTION NO. 4:10-CV-688-Y
                                 §
UNITED STATES TRUSTEE            §

ORDER REVERSING THE DECISION OF THE
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

On June 8, 2010, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth division ("the bankruptcy court"), denied the fee-enhancement request of CRG Partners Group, LLC ("CRG"). CRG now appeals this denial. After review, the Court concludes that the bankruptcy court applied an incorrect legal standard in evaluating the merits of CRG's fee-enhancement request. Therefore, the Court will reverse the bankruptcy court's decision and remand for further proceedings consistent with this opinion.

I.  Background

On December 1, 2008, Pilgrim's Pride Company and six affiliated companies (collectively, "Debtors") filed a chapter 11 bankruptcy petition in the bankruptcy court. Debtors retained CRG to provide a chief restructuring officer and other personnel to assist Debtors during the restructuring process. (R. at 2036-37.) CRG was highly effective throughout this process and facilitated a number of changes, including the replacement of certain executive officers and the development and implementation of a new business model. (R. at 2039, 2043.) On December 10, 2009, just over a year

from the date of filing, the bankruptcy court entered an order confirming Debtors' plan of reorganization, pursuant to which all of Debtors' creditors received full payment. (R. at 595, 2043.)

Following plan confirmation, the bankruptcy court approved $5.98 million in compensation for CRG. (R. at 2110.) CRG then filed a request for a fee enhancement on December 19, 2009, and an amended request on January 6, 2010, seeking a $1 million enhancement. (R. at 605, 891.) Appellee, the United States Trustee for Region 6 ("U.S. Trustee"), filed the sole objection to the fee-enhancement request, acknowledging the excellent performance of CRG but nevertheless asserting that CRG had already received adequate compensation. (R. at 712; Appellee Br. 6.) The U.S. Trustee further noted that CRG had received the amount of compensation it proposed at the time it bid for employment by Debtors. (Appellee Br. 6.) In addition, the chair of the fee-review committee, Nancy B. Rapoport, filed a response to CRG's fee-enhancement request, suggesting that CRG address the potential impact of the United States Supreme Court's intervening decision in *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010), a civil-rights case involving a fee-enhancement request under 42 U.S.C. § 1988. (R. at 1951-54.)

The bankruptcy court announced its findings of fact and conclusions of law on CRG's fee-enhancement request on June 8, 2010. (R. at 2113.) The bankruptcy court determined that the

2

recent *Perdue* decision, although a civil-rights case, governs fee-enhancement requests in bankruptcy cases. (R. at 2116.) And based on that determination, the bankruptcy court denied CRG's request for a fee enhancement. (R. at 2113-2122.) CRG then filed the instant appeal, contending that *Perdue* is controlling only in fee-shifting cases and that *Perdue* does not alter the previous state of the law in bankruptcy cases. Thus, on appeal, the sole issue before this Court is whether *Perdue* governs fee-enhancement requests in the bankruptcy context.[1]

II. Standard of Review

The Court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*. *In re Laughlin*,

---

[1] CRG also raised a second issue on appeal:

> Did the Bankruptcy Court err in denying [CRG]'s fee enhancement request even though the fee examiner found that [CRG] had satisfied each of the *Mirant* factors; namely that: (i) the results achieved in the case were "spectacular," i.e. all creditors were paid in full; (ii) [CRG] provided "exceptional efficiency" in the performance of services; (iii) [CRG] performed its fiduciary duties in a manner that ensured a "fair and equitable result" and (iv) [CRG]'s rates were significantly lower than those of other professionals in the case?

(Appellant Br. 1.) This issue, however, is not sufficiently narrow to permit meaningful appellate review. Moreover, because the bankruptcy court did not consider the *In re Mirant* factors, this Court would, in effect, be reviewing the issue in the first instance were it to decide the issue. The bankruptcy court had a front-row seat in observing CRG's work in this case and has had the opportunity to assess the credibility of the witnesses. Thus, the bankruptcy court is in a better position to decide the proper amount of fees under the applicable factors. *See In re Lawler*, 807 F.2d 1207, 2111 (5th Cir. 1987). This Court's role is simply to ensure that the bankruptcy court employs the correct legal standard and that its factual determinations are not clearly erroneous in light of the evidence. *See In re Laughlin*, 602 F.3d 417, 421 (5th Cir. 2010); *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003).

602 F.3d 417, 421 (5th Cir. 2010).

III. Discussion

    A.  The Law Pre-*Perdue*

Under 11 U.S.C. § 330(a)(1)(A), a court may award reasonable compensation and reimbursement to professionals such as CRG. *See* 11 U.S.C.A. § 330(a)(1)(A) (West 2011). In arriving at a reasonable amount, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors." 11 U.S.C.A. § 330(a)(2).[2] Moreover, courts within the Fifth Circuit employ the lodestar method to calculate the precise amount of the award. *See In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994). A court computes the lodestar "by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work." *Id.* (citing *Shipes v.*

---

[2] These factors include the following:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C.A. § 330(a)(3)(A)-(F).

*Trinity Indus.*, 987 F.2d 311, 319-20 (5th Cir. 1993)).

The lodestar then may be adjusted "upward or downward depending upon the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*" *Id.* (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeson*, 489 U.S. 871 (1989)).[3] However, "[t]he lodestar may be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar." *Id.* (citing *Shipes*, 987 F.2d at 319-20). Furthermore, upward adjustments of the lodestar "are proper only in certain rare and exceptional cases." *Id.* (quoting *Shipes*, 987 F.2d at 320).

Because neither the Supreme Court nor the United States Court of Appeals for the Fifth Circuit has articulated a uniform test for determining when a bankruptcy case is "rare and exceptional"--that is, when it merits a fee enhancement--Texas bankruptcy courts have been the primary source of authority on the issue in this district.

---

[3] The *Johnson* factors consist of the following:

(1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson*, 488 F.2d at 717-19).

*See In re Mirant*, 354 B.R. 113, 142 (Bankr. N.D. Tex. 2006), *aff'd*, 308 F. App'x 824 (5th Cir. 2009); *In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574, 577-78 (Bankr. N.D. Tex. 2004); *In re El Paso Refinery, L.P.*, 257 B.R. 809, 826 (Bankr. W.D. Tex. 2000). In a 2006 case, *In re Mirant Corp.*, the bankruptcy court set out a number of factors to consider when determining whether "rare and exceptional" circumstances exist such that a fee enhancement is appropriate. *See In re Mirant*, 354 B.R. at 142-44. Initially, the bankruptcy court in *In re Mirant* observed that "a spectacular result is a necessary prerequisite to any enhancement." *Id.* at 142; *see also In re El Paso*, 257 B.R. at 836 ("The 'results obtained' factor is one of the more significant factors in determining whether the circumstances of the case are so 'exceptional and rare' as to warrant a fee enhancement." (citation omitted) (internal quotation marks omitted)). Additional factors, according to *In re Mirant*, include whether the professional has "demonstrated exceptional efficiency in the performance of services"; whether the professional has either carried out his fiduciary obligations or ensured that his fiduciary clients understood and carried out theirs; and whether, based on the cost of comparable services, the amount of fees that the professional received under the lodestar calculation coincides with the quality of his work. *In re Mirant*, 354 B.R. at 142-43.

B. The Applicability of *Perdue* to Bankruptcy Cases

In *Perdue*, the Supreme Court addressed "the question [of] whether the calculation of an attorney's fee, under federal fee-shifting statutes, based on the 'lodestar,' i.e., the number of hours worked multiplied by the prevailing hourly rates, may be increased due to superior performance and results."[4] *Perdue*, 130 S. Ct. at 1669. The Supreme Court articulated "six important rules" derived from prior cases involving fee-shifting statutes and, based on those rules, determined that while "there is a 'strong presumption' that the lodestar figure is reasonable, . . . that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 1673.

The Supreme Court then made three observations concerning when such "rare circumstances" may exist: (1) "an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during

---

[4] The Supreme Court treated the factors of "superior performance" and "superior results" as a single factor. *Perdue*, 130 S. Ct. at 1674. While a superior outcome in a particular case may be attributable to the attorney's superior performance, observed the Court, it may also be attributable to other factors such as poor performance on the part of opposing counsel or an especially sympathetic jury. *Id.* The Court further noted that, "[s]ince none of these latter causes can justify an enhanced award, superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance." *Id.* Thus, the Court concluded it "need only consider whether superior attorney performance can justify an enhancement." *Id.*

7

the litigation"; (2) "an enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"; and (3) "there may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees." *Id.* at 1674-75. With those considerations in mind, the Supreme Court determined that, on the facts before it, the large fee enhancement that the district court had awarded was not appropriate. *Id.* at 1673-75.

Thus, *Perdue* establishes a framework different from the standard that has been used in Texas bankruptcy cases in determining whether to award a fee enhancement. *Perdue*'s applicability is, therefore, potentially dispositive of the instant case. Only a few district courts have considered the scope of *Perdue*, and this Court is one of them. In *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010)(Fitzwater, C.J.), this Court refused to reconsider a prior award of fees in a case involving a common-fund fee award based on the Court's conclusion that *Perdue* did not extend to common-fund cases. *See Klein*, 705 F. Supp. 2d at 683. This Court noted that "*Perdue* addresses how a fee should be calculated under a fee-shifting statute" and that *Perdue* "did not purport to overrule the reasoning or results of [cases involving] common fund fee awards." *Id.* Additionally, in a recent civil-rights case, *Sheperd v. Dall. Cnty., Tex.*, No. 3:05-CV-1442-D, 2010

WL 2573346 (N.D. Tex. June 24, 2010) (Fitzwater, C.J.), this Court qualified its application of *Perdue* by noting that the Court was "not suggest[ing] that *Perdue* applies outside the context of a fee-shifting statute such as 42 U.S.C. § 1988." *Sheperd*, 2010 WL 2573346, at *3 n.2 (citing *Klein*, 705 F. Supp. 2d at 683).

In an even more recent decision, *In re Vioxx Prods. Liab., Inc.*, No. 1657, 2010 WL 5576193 (E.D. La. Oct. 19, 2010), the United States District Court for the Eastern District of Louisiana noted that, in *Perdue*, "[t]he Supreme Court's holding was informed by the Supreme Court's lodestar jurisprudence and the statutory purpose of § 1988." *In re Vioxx*, 2010 WL 5576193, at *17 n.25. That court, therefore, concluded that "*Perdue* has little bearing on the use of the lodestar as a cross-check of a common benefit fee awarded as a percentage of a common fund." *Id.* Perhaps most on point, however, is *In re Heise*, 436 B.R. 143 (Bankr. D.N.M. 2010), in which the United States Bankruptcy Court for the District of New Mexico declined to extend *Perdue* to the chapter 13 case before it, noting that "[o]ther than the commonality of the lodestar as the subject of *Perdue* and of this case, which commonality arises from the fact that the lodestar methodology for calculating fees became commonplace after the practice of hourly billing had become widespread, the holding in *Perdue* is irrelevant for [the court's] inquiry." *In re Heise*, 436 B.R. at 149.

In the Court's view, these decisions are more consistent with

9

the language of *Perdue* than the bankruptcy court's decision in the instant case. For one thing, the *Perdue* opinion contains a significant amount of restrictive language. In the opening paragraph, for example, Justice Alito expressly limits the scope of the issue to "federal fee-shifting statutes." *Perdue*, 130 S. Ct. at 1669. Later in the opinion, Justice Alito indicates that the six rules leading to the Court's decision came from "prior decisions concerning the federal fee-shifting statutes." *Id.* at 1672. Further, *Perdue* makes a distinction between fee-shifting cases in which "an enhancement may be appropriate" and "cases not governed by the federal fee-shifting statutes." *Id.* at 1674.

In addition, the practical and policy considerations that guided the Supreme Court's decision arise out of the context of civil-rights cases, for which fee-shifting statutes like 42 U.S.C. § 1988 provide the authority for recovering attorneys' fees. *See, e.g.*, *id.* at 1674 ("[W]hen an attorney agrees to represent a civil rights plaintiff who cannot afford to pay the attorney, the attorney presumably understands that no reimbursement is likely to be received until the successful resolution of the case, and therefore enhancements to compensate for delay in reimbursement for expenses must be reserved for unusual cases."). All of these instances lead the Court to believe that the Supreme Court did not intend for *Perdue* to apply outside the context of federal fee-shifting statutes.

In the instant case, the bankruptcy court acknowledged that cases under fee-shifting statutes are "fundamentally different" from bankruptcy cases. But the bankruptcy court felt that "those differences only underscore why *Perdue* applies in bankruptcy cases." (R. at 2114.) That is, according to the bankruptcy court, the reasons set out in *Perdue* for why fee enhancements should be rare in fee-shifting cases apply with even greater force in the bankruptcy context. For example, noted the bankruptcy court, "when it comes to timing of payment, the fee-shifting cases are much more onerous to professionals than the typical bankruptcy case." (R. at 2114.) The bankruptcy court then stated that, "[i]f we consider [the] fundamental differences between fee-shifting cases and bankruptcy cases in general and this case in particular, we have to ask ourselves why *Perdue* would not apply when fee-shifting cases present far more burdens and risks to professionals than bankruptcy cases." (R. at 2116.) And because the bankruptcy court found *Perdue* controlling, it declined to "analyze the request for enhancement under the *Mirant* criteria." (R. at 2116.)

While the bankruptcy court's reasoning explains why it found *Perdue* persuasive, it does not explain why it found *Perdue* controlling. It is one thing for a court to seek guidance from a case decided in a different context; it is another thing entirely for a court to allow such a case to displace its previously-established precedent. *Perdue* did not purport to apply in

bankruptcy cases.  To the contrary, as this Court has previously explained, the Supreme Court employed rather restrictive language in *Perdue*.  Consequently, this Court disagrees with the bankruptcy court that *Perdue* controls in bankruptcy cases simply by virtue of the fact that many of *Perdue*'s policies apply with great force in the bankruptcy context.  A more appropriate response to *Perdue*, in the Court's view, is set forth in *Van Horn v. Nat'l Prop. & Cas. Ins. Co.*, No. 1:08-CV-605, 2010 WL 1751995, at *5 (N.D. Ohio Apr. 30, 2010).  In *Van Horn*, a class-action case, the United States District Court for the Northern District of Ohio determined that *Perdue* was not controlling, but the court nevertheless consulted *Perdue* as persuasive authority for refusing to award a fee multiplier.  *See Van Horn*, 2010 WL 1751995, at *5 ("Although decided in the context of statutory fee shifting under 42 U.S.C. § 1988, *Perdue* nevertheless provides persuasive caution that multipliers must be reserved for 'rare' and 'exceptional' circumstances.  Although this Court does not read *Perdue* to prohibit the use of multipliers in class actions, the case does suggest that enhancements are atypical and should not duplicate the same considerations affecting the lodestar rate.").

The U.S. Trustee contends that *Perdue* should apply to the instant case because bankruptcy courts in the Fifth Circuit have long applied the factors enumerated in *Johnson v. Ga. Highway Exp., Inc.*, a civil-rights case.  Similarly, the U.S. Trustee points out

12

that the Fifth Circuit has consulted a number of fee-shifting cases as persuasive authority in determining whether a fee is reasonable under 11 U.S.C. § 330. *See, e.g.*, *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008). As previously noted, however, the bankruptcy court determined that *Perdue* was controlling--not merely persuasive. Thus, the U.S. Trustee's argument on this point comes up short.

Furthermore, the mere fact that the Fifth Circuit relies on *Johnson* in evaluating fees in bankruptcy cases does not compel the conclusion that *Perdue* applies as well. Courts in the Fifth Circuit apply *Johnson* to bankruptcy cases because the Fifth Circuit has previously held that *Johnson*'s factors are helpful in assessing the reasonableness of fees in bankruptcy cases. *See Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1091-92 (5th Cir. 1980); *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299 (5th Cir. 1977), *legislatively overruled by* H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 330 (1977)). Likewise, courts in the Fifth Circuit apply certain other fee-shifting cases in the bankruptcy context because the Fifth Circuit has determined that the lodestar analysis set out in those fee-shifting cases should be employed in bankruptcy cases as well. *See, e.g.*, *In re Fender*, 12 F.3d at 487. The Fifth Circuit (or the Supreme Court) may eventually decide that *Perdue* should apply to bankruptcy cases. But it has yet to do so. And while the Fifth Circuit's prior reliance on civil-rights

precedent in bankruptcy cases is relevant in determining whether *Perdue* should be extended to the bankruptcy context, that reliance is not conclusive. Because *Perdue*, by its terms, applies to cases involving fee-shifting statutes, and in light of the previous decisions of this and other district courts on the issue, the Court concludes that *Perdue* does not apply in the bankruptcy context.

IV. Conclusion

Therefore, the Court concludes that the bankruptcy court applied an incorrect standard in analyzing CRG's fee-enhancement request. Accordingly, the decision of the bankruptcy court is REVERSED, and the case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion. This Court expresses no opinion as to the merits of CRG's request for a fee enhancement.

SIGNED February 14, 2011.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE